## W. A. GLEAVES *vs.* W. MORROW and others.

### April Term, 1876.

EXCEPTIONS TO AN ANSWER FOR INSUFFICIENCY.—Exceptions to an answer for insufficiency, although technically well taken, will be disallowed when founded upon mere verbal criticism, slight defect, or omission in matter not material to the cause, and when it is evident the defendant has no intention to evade discovery, and the sustaining of the exceptions would be of no benefit to the complainant.

EXCEPTIONS TO AN ANSWER FOR IMPERTINENCE AND SCANDAL.—Exceptions to an answer for impertinence will not lie for a few unnecessary words, unless the irrelevant passage would tend to the introduction of improper evidence, by putting facts in issue foreign to the cause, or embarrass the opposite party in making out his case ; nor for scandal, if the matter be pertinent.

*R. McP. Smith*, for complainant.
*J. Mackenzie*, for defendants.

THE CHANCELLOR:—This case comes before me upon ten exceptions to the answer of the executors of E. R. Pennebaker, deceased, all of which were overruled by the master, and no one of which, I am sorry to say, would, if sustained, be of the slightest benefit to the complainant. The transactions and conversations are charged by the bill to have been had by the complainant with the respondents' testator, and they are of such a character as to make it morally certain his executors would have neither knowledge, information, nor belief on the subject. Under these circumstances the complainant must stand upon the letter of the law and the technical rule, a somewhat " unsteady footing " in a court of equity.

Eight of the exceptions are for insufficiency, and two for impertinence and scandal. The former are, not that the defendants have failed to meet the substance of the charge, but that they have not followed the exact language in all its details, and answered, in so many words, to the best of their knowledge, information, and belief. The latter are, in effect, that, while denying for their testator the charge of fraudulent appropriation of the complainant's property, the defendants have retaliated by averring that the charge is a " foul aspersion," only " hatched up " for the complainant's purposes. The bill, without using a single harsh word, does in fact embody the gravest of charges. The answer is not so careful in its language.

The rules which regulate exceptions to chancery pleadings are intended to secure full discovery, and to prevent the records of the court from being encumbered with impertinent matter, or made the vehicles of private malice. They are rigidly enforced for the attainment of these ends. Whenever the object of the draftsman is obviously to conceal by words without knowledge, or to wring in unnecessary and improper matter, these rules furnish the means of rectifying the evil, and should be unhesitatingly resorted to. If, on the other hand, no real benefit is to be obtained by calling them into play, a resort to them is a useless con-

sumption of time, and sets ponderous machinery in motion to no purpose. While their proper use is essential to the attainments of the ends of justice, their abuse would be an intolerable evil.

Strictly speaking, every statement in pleading beyond the naked facts relied on is impertinent. This is strikingly illustrated in *Woods* v. *Woods*, 10 Sim. 197, 215. There the bill, in quoting certain clauses of a will in which several of the words were misspelt, prefaced them by saying that they were "in the words and figures hereinafter set forth, the inditing and spelling thereof being set forth with the greatest accuracy." Upon exception the Vice-Chancellor was of opinion that, if he proceeded rigidly, the prefatory words were impertinent, "because," said he, "if it was necessary to set out the will with all its errors, it would have been sufficient to allege that the testator made his will as follows, and then to have set out the will." It is obvious that such exceptions, however technically correct, could not possibly be allowed, and so it was held in *Del Pont* v. *Tastet*, 1 Turn. & R. 486. There the bill contained translations of certain letters of the defendant, written originally in French or Spanish, each of which was prefaced with these words: "According to an actual translation of such letter into the English language, he, the defendant, expressed himself in the words and figures, or to the purport and effect, following." The defendant excepted to the clause, "according to an accurate translation of such letter into the English language," and also to the clause, "in the words and figures, or," as impertinent. The effect of striking out these clauses would be to make the prefatory sentence read thus: "He, the defendant, expressed himself to the purport and effect following," which, it must be admitted, was a sufficient statement of the fact. Upon these exceptions Lord Eldon remarked: "To say that, because there are here and there two or three unnecessary words, it is making a right use of a rule to prevent oppression to refer the bill for impertinence, is a thing the court

ought not to endure." So, in regard to exceptions to an answer for insufficiency, Vice-Chancellor McCoun, in *Baggot* v. *Henry,* 1 Edw. Ch. 7, lays down the proper practice thus : " I wish to have it understood that whilst, on the one hand, I shall always hold a defendant to a full, frank, and explicit disclosure of all matters material or necessary to be answered, whether resting within his own knowledge or upon his information and belief, so, on the other hand, I mean, as far as lies in my power, to discourage the taking of those exceptions which are founded upon mere verbal criticism, slight defect, or omission in matter not material to the cause, and when it is evident the defendant can have no design or intention to suppress the truth, or evade a full and fair enquiry. And, whenever exceptions of the latter character are brought before me, I shall not hesitate to overrule them, and impose the payment of all such costs as a litigious and vexatious proceeding deserves." These rulings on exceptions for impertinence and insufficiency are manifestly sound and healthy expositions of the proper practice. The object of allowing such exceptions is to secure a substantial benefit, and whenever this object is not kept in view they should be treated as frivolous. Especially should this be so in a state where, so far as impertinent matter is concerned, a rigid enforcement of the rules is not necessary, in Lord Eldon's words, "to prevent oppression" in the way of costs. Exceptions for simple impertinence ought neither to be taken nor allowed, unless the irrelevant passage would tend to the introduction of improper evidence, by putting facts in issue which are foreign to the cause, or where the irrelevant matter might embarrass the opposite party in making out his case. *Hawley* v. *Wolverton,* 5 Paige, 525.

An exception for impertinence, unlike an exception for insufficiency, must be supported *in toto,* or it will fail altogether. *Wagstaff* v. *Bryan,* 1 Russ. & M. 30 ; *Tench* v. *Cheese,* 1 Beav. 571. If any of the matter excepted to is relevant—that is, if it can have any influence whatever in

the decision of the suit, either as to the subject-matter of the controversy, the particular relief to be given, or as to the costs—it is not impertinent or scandalous. *Van Renssellaer* v. *Brice*, 4 Paige, 177. "Nothing pertinent to the cause," says Lord Hardwicke, "can be said to be scandalous, and the *majus* or *minus* of the relevancy is not material." *Fenhoulet* v. *Passavant*, 2 Ves. 24. And see *Henry* v. *Henry*, Phill. (N. C.) Eq. 334; *Everett* v. *Prythergch*, 12 Sim. 363; *Lord St. John* v. *Lady St. John*, 11 Ves. 539. "Because an answer strongly reflects," says Lord Eldon, "it is not to be called scandal, if material and relevant to the justice of the case." *Coffin* v. *Cooper*, 6 Ves. 514. Nor is it scandalous, according to Sir John Leach, Vice-Chancellor, to impute to a party any corrupt or improper motive, nor that his conduct is the vindictive consequence of some act of the opposite party, if relevant to the relief sought—in the particular case, the removal of a trustee. *Earl of Portsmouth* v. *Fellows*, 5 Madd. 450.

With these lights before us we come to the consideration of the exceptions in question.

The first exception is to the sufficiency of the answer as to the mode in which certain payments are charged to have been made by the complainant, as secretary of the Nashville & Chattanooga Railroad Company, to the defendants' testator, as comptroller of the state. The allegation is that so much of the payment was made in past-due state bonds and the residue in state coupons. The answer is that the amount specified as paid in bonds was so paid, but respondents "are not prepared to say in what the balance of said payment was made, nor do they know the kind of receipt their said testator gave for the same." The exception is that the complainant is entitled to an explicit admission or denial of the allegation, or a formal declaration that the defendants have no knowledge, information, or belief on the subject. Undoubtedly it is the general rule that, as to matters not within the defendant's own knowledge, he must answer both as to his information and belief, and, where

the means of informing himself are readily accessible, the defendant should take pains to inform himself. For the object of discovery is, not merely to purge the conscience of the defendant, but to lighten the burden of proof. It is not necessary, however, that the defendant should say, in so many words, that he has no knowledge, information, or belief in relation to the matters charged. Any other expression which amounts to the same thing will be sufficient. *King* v. *Ray*, 11 Paige, 237. The statement of this answer, that the defendants " are not prepared to say " how the fact may be, is not equivalent to the answer required by the law, and the exception would, ordinarily, be well taken. But the difficulty here is that the averment of the bill is mere inducement, immaterial to the real controversy, and as to which the bill itself says: " But the details of the payment are shown upon the books of the company and upon those of the comptroller's office, *and no controversy will arise as to this matter.*" Under our practice a defendant must answer the charging part of the bill, without being specially called upon to do so by an interrogatory based upon it, with all the particularity imposed by law. But the complainant may waive the strictness of the rule by the form of his charge, and will not be permitted, after throwing the defendant off his guard, to insist upon the letter. He cannot, by means of an exception to the answer, make that a matter of controversy as to which, according to the frame of his bill, no controversy can arise. *Murrell* v. *Watson*, 1 Tenn. Ch. 342.

The second exception is to a single sentence of the answer as impertinent, in which the defendants say that the complainant will never convince them, or others who were acquainted with the character of their testator, that the latter ever converted to his own use coupons not belonging to him. The objection is that it is the court who is to be convinced, not the defendants or other parties. This is unanswerable, and the defendants' expression of opinion is irrelevant, and technically impertinent. But it is not the state-

ment of a fact which would tend to the introduction of improper evidence, or embarrass the complainant in making out his case. It is a useless and harmless interjection, about which the complainant need not trouble himself, and consists, to use Lord Eldon's expression, of "two or three unnecessary words." To refer a bill for impertinence on such a ground "is a thing the court ought not to endure."

The third exception is for impertinence and scandal in this—that the answer characterizes the charge of the bill, that respondents' testator converted complainant's coupons to his own use, as "a foul aspersion" upon the fair name of the deceased, and retorts that it "could only have been hatched up" for the purpose of reimbursing the complainant for losses occasioned by his own official delinquencies. But it is obvious that character is directly in issue upon the allegations of the bill. In the light of the authorities I cannot say that the matter excepted to as scandalous is not relevant to the issues, which implicate character, and may turn upon motives. "The *majus* or *minus* of the relevancy is not material."

From an examination of the residue of the exceptions, I am satisfied they have been added because the learned draftsman, having got his hand in, concluded he would see how many exceptions could be taken having some technical basis in the rule relied upon to sustain the first exception. Strictly speaking, some of them, and especially the fourth, are perhaps well taken. But they fall precisely in that class of exceptions which, in the language of Vice-Chancellor McCoun, "are founded on mere verbal criticism, slight defect, or omission in matter not material to the cause, and where it is evident the defendant had no design to suppress the truth, or evade a full and fair enquiry," and which he felt it his duty to discourage.

The master's rulings are sustained, and the exceptions disallowed.